UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**RONALD C.**[1]

      **Plaintiff,**

v.

Case No. 3:20-cv-0203
Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Ronald C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 13, *Defendant's Memorandum in Opposition*, ECF No. 16, *Plaintiff's Reply*, ECF No. 17, and the *Certified Administrative Record*, ECF No. 11. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants *Plaintiff's Statement of Errors* and reverses the Commissioner's decision and remands the action for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.      PROCEDURAL HISTORY

On January 11, 2016, Plaintiff filed his application for benefits, alleging that he has been disabled since October 30, 2013, due to a number of physical and mental impairments. R. 158-64.[3] The application was denied initially and upon reconsideration. R. 89-97, 99-105, and Plaintiff requested a *de novo* hearing before an administrative law judge. R. 107-08. Administrative Law Judge ("the ALJ") Deborah F. Sanders held a hearing on January 18, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. R. 31-60. In a decision dated April 19, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from Plaintiff's alleged disability onset date of October 30, 2013, through the date of that decision. R. 15-25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 20, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 19. The matter is ripe for disposition.

II.      LEGAL STANDARD

    A.    **Standard of Review**

A reviewing court will affirm the Commissioner's conclusion "absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

---

[3] References to pages as reflected in the Certified Administrative Record will be cited as "R. __."

2

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other co8ntexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    **B.**    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4) "The claimant bears the burden of proof through step four; at step five, the

burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 45 years old on his alleged disability onset date. R. 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus, type II, chronic left ankle pain, status-post open reduction internal fixation of the left ankle, depressive disorder, and post-traumatic stress disorder ("PTSD"). *Id*. The ALJ also found that Plaintiff's mixed hyperlipidemia, reactive airway disease, hyperopia with presbyopia, astigmatism, lattice degeneration bilaterally, and polysubstance abuse in remission were not severe. R. 18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18.

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of lightwork. R. 19-20. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a cleaner and vendor. R. 24.

At step five, the ALJ found that a significant number of jobs exist in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 24. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 30, 2013, his alleged disability onset date through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's evaluation of the evidence and RFC determination and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Statement of Errors,* ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 17.

IV. **RELEVANT EVIDENCE**

Although Plaintiff alleged, and the ALJ found, both physical and mental impairments, Plaintiff's "allegations of error center largely upon issues regarding mental health related limitations." *Plaintiff's Statement of Errors*, ECF No. 13, PageID# 1004 n.2. The Court will therefore limit its discussion to the evidence of, and the ALJ's consideration of, Plaintiff's depression and PTSD.

Plaintiff has been diagnosed with depression and PTSD, conditions for which he receives treatment at a Veteran's Administration ("VA") facility. Plaintiff testified at the administrative hearing that he became increasingly anxious and agitated around people, including customers and supervisors, which ultimately led to the end of his employment. R. 20, 48-50. He rarely leaves his apartment and sometimes does not get out of bed. R. 50-51. He has difficulty focusing and concentrating; his attention span is very short. R. 51-52.

In January 2015, psychologist Kimberley B. Braun conducted an evaluation of Plaintiff for the VA, and reviewed his history of treatment for PTSD. R. 530-42. According to the psychologist, Plaintiff "meets full DSM-5 criteria for a diagnosis of PTSD." R. 541. Moreover, the psychologist also attributed Plaintiff's symptoms of depression, at least in part, to his PTDS: "Further, his depression has been exacerbated by his continue isolation, distrust of others, and his limited social interactions which are related to his PTSD." R. 542. The psychologist considered Plaintiff's mental impairments and their impact on his ability to function:

6

> Currently, the veteran's mental health symptoms appear to be having a moderate impact on social and occupational functioning. He has held numerous jobs since his discharge from the service, but reports that he often quits them due to difficulties interacting with others. Veteran exhibits mental health symptoms that interfere with interpersonal relatedness, concentration and memory, and ability to tolerate stress and motivation. These symptoms impair the veteran's ability to work cooperatively and effectively with co-workers and supervisors, communicate effectively, and maintain persistence on tasks. Socially, the veteran reported that he gets along well with his mother and stepfather, but reports that he has no real friends and has not been involved in a significant relationship since the early 90s. Veteran noted that distrust of others, isolation and withdrawal, and feelings of detachment contribute to difficulties in his social relationships.

*Id.*

In January 2017, Bruce Goldsmith, Ph.D., reviewed the record for the state agency and opined that Plaintiff was not significantly limited in his ability to carry out simple work-related instructions, to maintain regular attendance, and to work in coordination with or in proximity to others without being distracted by them. R. 69. Plaintiff was moderately limited in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. *Id.* According to Dr. Goldsmith, Plaintiff would be limited to "[o]ccasional and superficial interaction with others." *Id.*

Cindy Matyi, Ph.D., reviewed the record on reconsideration on behalf of the state agency in April 2017, R. 77-85, and generally echoed Dr. Goldsmith's assessment that Plaintiff was moderately limited in his ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors. R. 82. According to Dr. Matyi, Plaintiff "can relate adequately on a superficial basis in an environment that entails infrequent public contact, minimal interaction with coworkers and no over-the-shoulder supervisor scrutiny." R. 83. Plaintiff could, in Dr. Matyi's opinion, "adapt to a setting in

7

which duties are routine and predictable. Changes should be explained." *Id.* [4]

That same month, Celine Payne-Gair, Ph.D., the agency's medical consultant, reviewed the mental RFC assessment of the state agency psychologists, indicated that she agreed with their assessments, R. 816, but opined as follows:

> The claimant can understand and remember simple and detailed instructions. The claimant can complete simple and detailed tasks, maintain attention and concentration for periods of at least two hours, complete a normal workday and workweek w/o significant psychologically related interruptions, and perform at a consistent pace. The claimant can relate appropriately to peers and supervisors. The claimant can adapt to routine change in the workplace.

R. 819.

The ALJ found that Plaintiff has the RFC, from a mental standpoint, to

> carry out simple, routine tasks, but not at a fast production rate pace or with strict production quotas; can have occasional interaction with co-workers, with no tandem or shared tasks, can have occasional interaction with the public, but not in a customer service capacity; can have occasional interaction with supervisors, but no over the shoulder supervision; and can adapt to a relatively static environment with any changes explained.

R. 19-20. In making this finding, the ALJ expressly considered the opinions of the state agency reviewing psychologists, giving their opinions "some" or "partial" weight, R. 64-65, and gave the medical consultant's opinion

> little weight because the evidence of record … shows that the claimant is more limited than as assessed. The claimant has required therapy as well as psychotropic medication to treat his mental impairments, which is consistent with moderate limitations in multiple areas of mental functioning.

R. 23. The ALJ made no mention whatsoever of Dr. Braun's evaluation or opinions.

## V.    DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ committed reversible error in her failure to evaluate, or to even mention, Dr. Braun's evaluation and opinions. This Court agrees.

---

[4] It does not appear that either state agency reviewing psychologist specifically referred to Dr. Braun's January 2015 evaluation and assessment.

In considering a claimant's application for disability benefits, an ALJ must "consider all evidence" in the record. 42 U.S.C. § 423(d)(5)(B)(2012). *See also* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.") The ALJ's apparent failure to consider Dr. Braun's assessment and opinions was error and the Acting Commissioner apparently agrees with that conclusion. *Defendant's Memorandum in Opposition*, ECF No. 16, PageID# 1032-34. However, the Acting Commissioner also contends that, because the RFC found by the ALJ "accounted for any limitations assessed in Dr. Braun's opinion," any such error in failing to expressly consider her evaluation and opinions was harmless. *Id*. at PageID# 1034.

It is true that an ALJ's error in failing to properly evaluate a medical source opinion can be viewed as harmless "if the ALJ adopted the opinion or made findings consistent with that opinion." *Beery v. Commissioner of Soc. Sec.,* 819 F. Appx. 405, 408 (6th Cir. 2020)(citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). Dr. Braun opined that Plaintiff's mental impairments have a "moderate" impact on his functioning, R. 542, and the state agency psychologists, whose opinions were accorded "some" or "partial" weight by the ALJ, R. 22-23, also characterized Plaintiff's mental impairments as resulting in some "moderate" limitation of functioning. However, this case presents, not merely an improper evaluation of Dr. Braun's expert opinion, but rather a complete failure to consider that opinion. Under these circumstances, this Court is not at all confident in its ability or even authority to determine in the first instance whether the RFC found by the ALJ–who apparently never considered Dr. Braun's assessment–in fact fully incorporated her opined limitations. The Court therefore concludes that the matter must be remanded to the Commissioner for consideration in the first instance of Dr. Braun's evaluation and opinions and their effect, if

any, on Plaintiff's RFC. Moreover, the Court concludes that remand is appropriate even if, on remand, the Commissioner again concludes that Plaintiff has the same RFC and is not entitled to benefits.[5]

## VI. CONCLUSION

For these reasons, the Court **GRANTS** *Plaintiff's Statement of Errors,* ECF No. 13, **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date: May 13, 2022                              *s/Norah McCann King*
                                                              NORAH McCANN KING
                                                       UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Braun's evaluation and opinions, the Court does not consider those claims.